UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JENNIFER BARRY,

                          Plaintiff,

      v.                                              **DECISION AND ORDER**
                                                                 12-CV-1124S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,[1]

                          Defendant.

       1.      Plaintiff, Jennifer Barry, challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Barry alleges that she has been disabled since January 1, 2005.

       2.      The Commissioner of Social Security ("Commissioner") denied Barry's initial application for benefits, and as result, she requested an administrative hearing. She received that hearing before ALJ William Weir on March 1, 2011. The ALJ considered the case *de novo*, and on March 25, 2011, issued a decision denying Barry's application. Barry's request for review with the Appeals Council was denied, prompting her to file the current civil action on November 14, 2012, challenging Defendant's final decision.[2]

       3.      On May 29, 2013, the Commissioner filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Barry filed her own motion two days later. For the following reasons, the Commissioner's motion is granted

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, under Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is substituted for former Commissioner, Michael J. Astrue, as the defendant in this suit.

[2] The ALJ's March 25, 2011 decision became the Commissioner's final decision when the Appeals Council declined to review Barry's claim.

and Barry's is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). This Court must, however,

"independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled." Valder v. Barnhart, 410 F. Supp. 2d 134, 138 (W.D.N.Y. 2006). "Failure to apply the correct legal standards is grounds for reversal." Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d

582, 584 (2d Cir. 1984).

      8.     In this case, the Commissioner made the following findings: (1) Barry has not engaged in substantial gainful activity since her alleged onset date (R. 25.);[3] (2) Barry's diagnosis of major depressive disorder is a severe impairment (id.); (3) she does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id.); (4) she cannot perform any of her past relevant work (R. 30), but she retains the residual functional capacity ("RFC") for the full range of work so long as it is limited to simple repetitive tasks (R. 27), and last, (5) Barry could perform work that exists in significant numbers in the national economy. (Id.)

      9.     Barry argues that remand or reversal is required because the ALJ (1) misapplied the appropriate legal standards in determining her RFC, (2) did not properly assess her credibility, and (3) failed to contact a vocational expert.

      10.    Regarding the first objection, Barry essentially argues that the ALJ's RFC fails to account for her non-exertional limitations, such as her capacity for understanding, and her ability to respond to supervision and deal with changes in a work setting. But while Barry argues that the ALJ should have considered her limitations in this regard, she does not identify what limitations she has. Further, it is apparent that the ALJ did consider the mental aspect of the RFC, as he limits Barry to "simple repetitive tasks." (R. 27.) Barry, pointing to the assessment of Dr. Rachel Hill, a consultive examiner, argues that these limitations, whatever they may be, render her unable to work. But while Dr. Hill did find that she "cannot maintain a regular schedule," she also found that she can understand simple

---

[3] Citations to the underlying administrative record are designated "R."

4

directions and instructions; could perform simple tasks independently, could perform complex tasks "if she knows them well"; could make good decisions, "if they are simple"; and only has "some" trouble maintaining attention and concentration." (R. 214.) This amounts to substantial evidence on which the ALJ could rely in fashioning the RFC. Barry can point to no other evidence in the record that would lead to a different result. Instead, she seizes on the ALJ's notation that, given the severity of her alleged ailments, "one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor," (R. 29) and argues that the ALJ should have developed the record further. But "an ALJ is required to obtain additional evidence *only* if [he] cannot decide whether a claimant is disabled based on the existing evidence." Gray v. Astrue, No. 09-CV-00584, 2011 WL 2516496, at *6 (W.D.N.Y. June 23, 2011) (emphasis added). If the ALJ already possesses a complete medical history, he is not obligated to re-contact a physician. Id. (internal quotation marks omitted) (citing Rosa, 168 F.3d at 79); see also 20 C.F.R. § 404.1512(e) ("When the evidence we receive from your treating physician . . . is *inadequate* for us to determine whether you are disabled, we will need additional information to reach a determination or a decision") (emphasis added).[4] Here, there are no gaps or inconsistencies; rather, the ALJ simply noted that no doctor advised her to limit her activities. This does not mean the record is incomplete.

11.    Barry cites this Court's holding in Jeffords v. Astrue for the proposition that when an ALJ "relies on records, reports, or opinions that themselves do not include any discussion of the plaintiff's limitations and ability to perform work-related activities, reversal

---

[4]Although the Commissioner amended 20 C.F.R. §§ 404.1512, 416.912 effective March 26, 2012, to remove the duty imposed on ALJs to re-contact treating physicians, this Court will apply the version of the regulation in effect when the ALJ adjudicated the claim.

and remand for additional proceedings is warranted." No. 11-CV-620S, 2012 WL 3860800, at *7 (W.D.N.Y. Sept. 5, 2012). But Barry omits the beginning of the sentence, which adds the additional qualification that this is true when the ALJ "gives great weight to" the opinions of treating physicians. Further, in Jeffords, there was no medical-source statement, nor any "report assessing the plaintiff's ability to work," and the ALJ did not request one. Id. at *6. Here, by contrast, the ALJ did not give "great" weight to the records of the treating physician, there was a medical-source statement from Dr. Junaid Hashim (R. 196–202), and the Commissioner did request that Dr. Hashim perform an evaluative functional assessment. Though Dr. Hashim declined to complete it, the ALJ's duty is limited to "request[ing] RFC assessments." Johnson v. Astrue, 811 F. Supp. 2d 618, 630 (E.D.N.Y. 2011); see also 20 C.F.R. § 404.1513(b)(6) (lack of RFC from treating source will not render a report incomplete, but Commissioner will request one); Pellam v. Astrue, 508 F. App'x 87, 90 (2d Cir. 2013) (because ALJ had adequate information, he had no "further obligation to supplement the record by acquiring a medical source statement from one of the treating physicians"). Accordingly, this Court finds no error in the ALJ's decision to rely on the record as it stood.

12.   Barry next argues that the ALJ erred in evaluating her credibility by referencing her RFC. The ALJ found that Barry's "impairment could reasonable be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [] [RFC] assessment." (R. 29.) Barry argues that the ALJ's reference to the RFC constitutes error. Indeed, courts in this District and beyond have found that it is error to merely compare a claimant's statements regarding her symptoms to the ALJ's own RFC assessment. See Bjornson v. Astrue, 671 F.3d 640, 645

(7th Cir. 2012); Caternolo v. Astrue, No. 6:11-CV-6601 MAT, 2013 WL 1819264 (W.D.N.Y. Apr. 29, 2013); Smollins v. Astrue, No. 11–CV–424, 2011 WL 3857123, at *11 (E.D.N.Y. Sept. 1, 2011). As courts have noted, "'The assessment of a claimant's ability to work will often depend on the credibility of her statements concerning the intensity, persistence and limiting effects of her symptoms.' Thus, it is not logical to decide a claimant's RFC prior to assessing her credibility." Caternolo, 2013 WL 1819264 at *12 (quoting Otero v. Colvin, No. 12–CV–4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar.19, 2013)). But this Court agrees with the Commissioner that whatever error may be present is largely based on semantics and not cause for reversal. Although the passage, in itself, implies that ability to work is determined first and is then used to determine the claimant's credibility, which would "get things backwards," see Bjornson, 671 F.3d at 645, as other courts have found, "[r]ead in context, [] this statement does not indicate that the RFC assessment was a basis for a finding of lack of credibility." Briscoe v. Astrue, 892 F. Supp. 2d 567, 585 (S.D.N.Y. 2012). Instead, because "the ALJ's decision discusses in detail the aspects of [Barry's] testimony that were contradicted by other evidence in the record, it is [] clear that the ALJ" fully assessed Barry's credibility and did not simply discount any allegations that were not compatible with his RFC determination. See id.; see also Campbell v. Astrue, 465 F. App'x 4, 7 (2d Cir. 2012) (finding no error where the ALJ determined that the intensity and persistence of the claimant's symptoms was not credible "to the extent it was inconsistent with the light work residual functional capacity assessment") (modifications omitted).

What is more, the evidence supports the ALJ's assessment. As ALJ Weir noted, there is nothing in the record to suggest that Barry is unable to perform simple repetitive tasks and, in the end, it is the ALJ's prerogative to weigh "the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49

7

(2d Cir. 2010). This Court finds no error in his determination that the persistence and intensity of Barry's symptoms were overstated and that she could perform simple tasks.

13. Moving to Barry's final objection, at step five of the process described above, the ALJ considers a claimant's RFC and vocational factors in determining whether she can perform other work. See 20 C.F.R. § 404.1520(g). Here, based on the Medical-Vocational Guidelines, the ALJ found that Barry could perform jobs that exist in significant numbers in the national economy. An ALJ can rely on the Medical-Vocational Guidelines where the claimant's non-exertional limitations do not significantly limit the range of work the claimant can perform. Zabala v. Astrue, 595 F.3d 402, 410-11 (2d Cir. 2010). Otherwise, he should contact a vocational expert. Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986). Barry contends that, given the (unidentified) non-exertional limitations, the ALJ erred by relying on the Guidelines and should have contacted a vocational expert. But Barry states only that "Plaintiff's mental impairments are non-exertional and result in more than 'negligible' limitations." (Pl.'s Br. At 14.) She does not explain what impairments the ALJ overlooked, how they would result in work-related limitations, or what those limitations might be.

But in any event, unskilled work – the type that the ALJ determined Barry could perform – generally requires the capacity to understand, remember, and carry out simple instructions; make simple work-related decisions; respond appropriately to supervisors, co-workers and usual work situations; and deal with changes in a routine work setting. SSR 96-9p, 1996 WL 374185, at *8. This Court has already determined that the ALJ did not err in finding that she could navigate these tasks. "Thus, her nonexertional limitations did not result in an additional loss of work capacity, and the ALJ's use of the Medical–Vocational Guidelines was permissible." Zabala, 595 F.3d at 411.

14. This Court recognizes that Barry has struggled with depression at times, and

that she has had significant flare-ups. But the ALJ is entitled to rely not only what the record says, but "also on what it does not say." See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). After undertaking a full review of the record, it becomes clear that the ALJ's findings must be sustained. The evidence simply does not compel a finding that she is disabled and cannot perform unskilled, simple work. This Court will therefore grant Defendant's Motion for Judgment on the Pleadings, and deny Plaintiff's motion for the same relief.

*****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated:  March 23, 2014
        Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            Chief Judge
                                            United States District Court